**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| WESTPORT PETROLEUM, INC., | § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-05-4158 |
| STENA BULK, LTD. STENA BULK, L.L.C., | § § § | |
| Defendants. | § § | |

**MEMORANDUM AND ORDER**

**I.    Background**

Plaintiff, Westport Petroleum, Inc., a California company with offices in California and in Tennessee, sued three affiliated entities, Stena Bulk A/B, Stena Bulk Ltd., and Stena Bulk L.L.C.  Stena Bulk A/B is a Swedish company with offices in different countries.  Stena Bulk Ltd., formerly known as Sten Tex. UK Ltd., is based in London.  Stena Bulk L.L.C. is a Delaware company with an office in Houston, Texas.  In this suit, Westport alleged that in November 2004, it entered into a joint venture with Stena Bulk A/B for the operation of shipping vessels. The joint venture parties were to share profits and losses from the operation of ocean-going petroleum cargo vessels contributed to the joint venture.  Three vessels were contributed to the joint venture, the M/T REDINA, M/T JAG LEELA, and M/T IBLEA.

In its original complaint, Westport alleged that the joint venture parties had agreed that the commercial management of the vessels under the joint venture agreement was to be

conducted by Stena Bulk L.L.C. and that the commercial management records would be available at Stena Bulk L.L.C.'s Houston office.  Westport also alleged that Stena Bulk A/B was not entitled to receive $800,566 under the joint venture agreement until the commercial management records were inspected and the basis for the profits and losses attributed to the vessels was determined.  Westport also alleged that Stena Bulk A/B improperly terminated the joint venture agreement.

Stena Bulk A/B and Stena Bulk Ltd. moved to dismiss on the basis of improper service of process and lack of personal jurisdiction, as well as the presence of an arbitration clause in the joint venture agreement.  (Docket Entry Nos. 16, 17).  The joint venture agreement included a provision stating, "This agreement shall be governed by the law and arbitration as agreed in the respective underlying Time Charter agreements."  The time charters relating to the three vessels contributed to the joint venture contained broad arbitration agreements calling for arbitration in London.  At a hearing, counsel for Westport stated that it would dismiss the claims against Stena Bulk A/B in favor of the arbitration and amend the complaint to proceed solely against Stena Bulk L.L.C. and Stena Bulk Ltd. Westport's second amended complaint deleted the claims against Stena Bulk A/B, making Stena Bulk A/B's motion to dismiss moot.

The second amended complaint asserted virtually the same allegations as the original complaint, but without naming Stena Bulk A/B as a party.  Westport alleged that it had agreed with Stena Bulk L.L.C. and Stena Bulk Ltd. that commercial management of the three vessels submitted to the Westport-Stena Bulk A/B joint venture would be conducted by Stena

Bulk L.L.C. and that the records would be in the Stena Bulk, L.L.C.'s Houston office for Westport to inspect. Westport alleged that Stena Bulk L.L.C. and/or Stena Bulk Ltd. managed the vessels, failed properly to account for the vessels' income, took an unauthorized commission based on the income, and failed to make the records relating to the vessel management available in Houston. Westport asserted breach of contract for all three vessels. Westport also sought a declaratory judgment that Stena Bulk L.L.C. was the entity the parties agreed would conduct the commercial management duties, that Westport had the right to inspect the records in Houston, and that the commercial manager had to account for and return commissions received to either Westport or the joint venture. (Docket Entry No. 31).

Stena Bulk Ltd. reasserted its earlier-filed motion to dismiss for improper service and lack of personal jurisdiction and asserted that the dispute should be resolved in the London arbitration. (Docket Entry No. 17, 34). Both Stena Bulk Ltd. and Stena Bulk L.L.C. moved to stay this litigation pending the arbitration between Westport and Stena Bulk A/B. (Docket Entry No. 39). Based on the pleadings, the motions and responses, the parties' submissions, and the applicable law, this court denies Stena Bulk Ltd.'s motions to dismiss based on improper service,[1] denies Stena Bulk Ltd.'s motion to dismiss for lack of personal jurisdiction without prejudice, and grants Stena Bulk, L.L.C. and Stena Bulk Ltd.'s motion to stay pending the resolution of the arbitration between Westport and Stena Bulk A/B. The reasons are set out below.

---

[1] Westport filed proof of service on Stena Bulk Ltd. through the Hague Convention. (Docket Entry No. 26).

3

## II.   Analysis

### A.   The Motion to Stay

The Westport-Stena Bulk A/B joint venture agreement is the basis for two arbitration proceedings pending before the same arbitrator in London. Westport voluntarily began the first arbitration proceeding to determine the hire rate for the M/T JAG LEELA, one of the vessels contributed to the joint venture. (Docket Entry No. 38 at 5). The second proceeding was ordered by the High Court in London to address "issues arising out of the joint venture agreement" for all three vessels. (Docket Entry No. 38 at 5-6). The High Court noted that the arbitration agreement precluded Westport from litigating these claims against Stena Bulk A/B. The nonsignatory Stena affiliates that Westport sued in this case have moved for a stay of this litigation pending the outcome of the arbitration between Westport and Stena Bulk A/B.

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, applies, with its strong federal policy in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

Under section 3, "a stay is mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration under an agreement in writing for such arbitration . . . ." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). The Fifth Circuit has interpreted this language to mean that "any of the parties to the suit can apply to the court for a mandatory stay, and the court must grant the stay if the claim at issue is indeed covered by the arbitration agreement." *Waste Management, Inc. v. Residuos Industriales Muliquim, S.A.,* 372 F.3d 339, 342 (5th Cir. 2004). In *Waste Management*, the Fifth Circuit held that a nonsignatory to an arbitration agreement may invoke section 3 to seek a mandatory stay of litigation pending arbitration when the litigation involves an issue covered by an arbitration agreement, even if the signatory could not be compelled to arbitrate that issue with the nonsignatory. *Id*. The issue in this case is whether Westport's claims against Stena Bulk Ltd. and Stena Bulk L.L.C. are "referable to arbitration" under the joint venture agreement with Stena Bulk A/B. In *Waste Management*, the Fifth Circuit identified three factors to determine whether a section 3 stay should issue on application of a nonsignatory:

> (1) the arbitrated and litigated disputes must involve the same operative facts; (2) the claims asserted in the arbitration and litigation must be 'inherently inseparable'; and (3) the litigation must have a 'critical impact' on the arbitration.

372 F.3d 339, 343 (citations omitted). "The question is not ultimately one of weighing potential harm to the interests of the non-signatory, but of determining whether proceeding with litigation will destroy the signatories' right to a meaningful arbitration." *Id.* (citing *Adams v. Ga. Gulf Corp.*, 237 F.3d 538, 541 (5th Cir. 2001)).

The Fifth Circuit synthesized these factors from its precedents. In *Subway Equipment Leasing v. Forte*, 169 F.3d 324 (5th Cir. 1999), the court considered whether a defendant who had signed an arbitration agreement with the plaintiff was entitled to a stay of litigation under section 3 of the FAA as to the plaintiff's claims against other defendants who had no contractual right to arbitrate with the plaintiff. *Id.* at 329. The court reaffirmed its precedent that an order to stay covering the plaintiff's claims against all the defendants was proper, even as to the defendants that had not signed arbitration agreements, if litigation could not proceed on those claims without adversely affecting the signatories' right to arbitration. *Id.* (citing *Sam Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976) (holding that an order to stay litigation covering claims against all defendants was appropriate, even though two defendants were not parties to the arbitration agreement). In *Harvey v. Joyce*, 199 F.3d 790, 795 (5th Cir. 2000), the court applied section 3 to a nonsignatory corporation whose potential liability arose out of, and was inseparable from, the claims against its owner, who did sign an arbitration agreement. The court stated that if the lawsuit against the nonsignatory was allowed to proceed, it would make the arbitration proceedings "both redundant and meaningless; in effect, thwarting the federal policy in favor of arbitration." *Id*. In *Hill v. G. E. Power Systems, Inc.*, 282 F.3d 343 (5th Cir. 2002), the court reversed a denial of a stay of litigation of claims against a nonsignatory to an arbitration agreement pending arbitration among the plaintiff and signatories to the arbitration clause. The court found the arbitration and the litigation to be based on the "same operative facts" and "inseparable." *Id*. at 347-48. *See also Kroll v. Doctor's Assocs., Inc*., 3 F.3d 1167, 1171

(7th Cir. 1993) ("[A] decision about whether to grant a stay should be motivated by the court's 'concern that litigation against a party not bound by an arbitration provision may impair an arbitrator's consideration of claims against a party that is compelled to arbitrate.'").

A comparison of the issues and claims involved in this litigation with the issues and claims involved in the pending arbitrations reveal that they arise from the same operative facts and are inherently inseparable. The issues and claims in this case arise from the joint venture between Westport and Stena Bulk A/B, which is the basis of the arbitration. In both the litigation and the arbitration, the parties dispute the identity of the Stena entity appointed to be the commercial manager of the vessels contributed to the Westport/Stena Bulk A/B joint venture. The Stena entities assert that it was Stena Bulk Ltd.; Westport asserts that it was Stena Bulk L.L.C. In both the litigation and the arbitration, the issue of whether the commercial manager was to receive a commission is raised. In both the litigation and the arbitration, the issue of whether the commercial manager properly accounted for the vessel income and profits is critical. In the arbitration, that issue is important to determining whether and how much Westport must pay Stena Bulk A/B. In the litigation, that issue is important to determining whether Stena Bulk L.L.C. and/or Stena Bulk Ltd. breached their alleged commercial management contract with Westport and whether the commission received may be retained. In both the litigation and the arbitration, Westport asserts that it had a right to review the commercial management records for the vessels in Houston, rather than in London. The Stena entities assert that the accounting records were properly made available in London. In both the litigation and the arbitration, the issue of whether the

commercial manager properly deducted a commission in the amount of 1.25% of the voyage freight, dead freight, and demurrage earned by each vessel is raised. In the litigation, Westport asks this court to order the commercial manager to return the commission. In the arbitration, Stena Bulk A/B asserts that Stena Bulk Ltd. was entitled to receive a fee of 1.25% of the vessels' earnings, and Westport asserts that it is entitled to any sums that were deducted from the joint venture's profits to pay the commission.

Westport argues in opposition to the stay that only one issue in this litigation overlaps with the arbitration, the "mathematical calculation" of the commissions, if any, properly paid to Stena Bulk L.L.C. and/or Stena Bulk Ltd. The issue of whether the commercial manager was due a commission and, if so, how much should be paid, is important to both the litigation and the arbitration. In the arbitration, it is critical to determining the amount owed as between the joint venture parties because the amount of joint venture losses is affected by the commission paid. In the arbitration, "Westport seeks payment to it of the sums deducted by way of the fee commission to Stena Bulk Ltd. from the profits distributed under the joint venture." (*See* Docket Entry No. 39-2 at 25). In the litigation, this issue is critical to determining whether the commercial managers breached obligations to Westport. In this lawsuit, Westport seeks damages for the commercial managers' alleged failure to account for the vessels' profits and losses and to make the records available for inspection in Houston, and Westport asks this court to order the commercial manager to return the commission payment it received. Contrary to Westport's assertion, the issues and claims in the litigation and the arbitration largely overlap, involve the same operative facts, and are inherently

inseparable. This court could not resolve the claims and issues Westport raises against the alleged commercial managers without considering many of the claims and issues that are also critical to the arbitration.

Finally, proceeding in this case will have a "critical impact" on the pending arbitration. Allowing the litigation to proceed would risk inconsistent results with the arbitration and would likely "substantially impact" the arbitration because of the factual similarities in the claims and issues pending in both tribunals. Allowing this litigation to proceed to a court determination of Stena Bulk Ltd.'s and Stena Bulk L.L.C.'s liability would affect the determination of Stena Bulk A/B's liability in the London arbitrations.

Under the *Waste Management* factors, this court concludes that Stena Bulk Ltd. and Stena Bulk L.L.C. have the right under section 3 to request a stay pending arbitration and that the factors requiring issuance of the stay are amply demonstrated on this record. The motion to stay this litigation pending arbitration is granted.

**B.     Stena Bulk Ltd.'s Motion to Dismiss For Lack of Personal Jurisdiction**

This court may rule on the motion to stay before resolving Stena Bulk Ltd.'s motion to dismiss for lack of personal jurisdiction and improper venue. The Supreme Court has held that courts may not assume "hypothetical jurisdiction" to resolve a case on the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998). An actual determination must be made whether subject matter jurisdiction exists before a court may turn to the merits of a case. The Court later concluded that this principle applied equally to personal jurisdiction because "[p]ersonal jurisdiction, too, is an essential element of the jurisdiction

9

of a district . . . court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (ellipsis in original) (internal quotation marks omitted). The Court held, however, that the existence of subject matter jurisdiction need not be decided before personal jurisdiction, stating that "[i]t is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits." *Id.* at 585. While *Steel Co.* required rulings on subject matter jurisdiction before rulings on the merits, the *Ruhrgas* Court held that it did not "dictate a sequencing of jurisdictional issues." *Id.* at 584. A dismissal on "'non-merits grounds such as . . . personal jurisdiction, before finding subject-matter jurisdiction, makes no assumption of law-declaring power that violates the separation of powers principles underlying [*Steel Co.*]'" *Id.* at 584-85, (quoting *In re Papandreou*, 139 F.3d at 255) (omission in original).

In *Malaysia Int'l Shipping Corp. v. Sinochem Int'l Co. Ltd.*, 436 F.3d 349, (3d Cir. 2006), the Third Circuit held that a court had to decide personal jurisdiction before ruling on *forum non conveniens*. The court relied heavily on the "very nature and definition of *forum non conveniens*, which requires a ruling on which forum, otherwise available, is more convenient to decide the merits." *Id*.

A motion to stay litigation pending arbitration under section 3 of the FAA, which does not compel arbitration but merely delays the litigation, is not a ruling on the merits. *See Apache Bohai Corp. v. Texaco China, B.V.*, 330 F.3d 307, 309 (5th Cir.), *cert. denied,* 540 U.S. 880 (2003) (dismissing appeal of stay pending arbitration for lack of appellate jurisdiction and holding that "a stay, by definition, constitutes a postponement of

proceedings, not a termination, and thus lacks finality."); *see also Davis International v. New Start Corp.*, 2006 WL 839364 (D. Del.) (finding no need to decide personal jurisdiction before ruling on a motion to dismiss based on estoppel). Because the motion to the stay litigation pending the arbitration does not seek a ruling on the merits of this case, the motion to stay can be resolved before the challenge to personal jurisdiction.

Additional support for delaying resolution of Stena Bulk Ltd.'s motion to dismiss based on personal jurisdiction arises from Westport's request for discovery to support its opposition to the motion to dismiss. That discovery would likely extend to matters that are also at issue in the pending arbitrations, including the corporate structure of the Stena entities, the negotiations of the joint venture agreement and commercial management arrangements, the movements of the vessels under the joint venture, and the actions taken to manage the vessels contributed to the joint venture. Allowing this discovery before deciding the motion to stay pending the arbitration would be inconsistent with the reasons for staying the litigation while the arbitration proceeds.

Stena Bulk Ltd.'s motion to dismiss for lack of personal jurisdiction and improper venue is denied without prejudice. This challenge may be reasserted, if appropriate, if and when the arbitration is concluded and the stay is lifted.

### III.   Conclusion

This case is stayed and administratively closed pending the completion of the arbitration proceedings between Westport and Stena Bulk A/B. A party may seek to lift the

stay by filing a motion within 30 days from the date either or both of the two arbitration proceedings is concluded.

Stena Bulk A/B's motion to dismiss is denied as moot.

Stena Bulk Ltd.'s motion to dismiss for insufficiency of process and insufficiency of service is denied.

Stena Bulk Ltd.'s motion to dismiss for lack of personal jurisdiction and improper venue is denied without prejudice.

SIGNED on September 5, 2006, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge